**LAULETTA BIRNBAUM, LLC**
*A New Jersey Limited Liability Company*
**Dante B. Parenti (I.D.# 005571985)**
**Matthew R. Dellinger, Esq. (I.D. #349582024)**
591 Mantua Blvd., Suite 200
Sewell, New Jersey 08080
Phone (856) 232-1600; Fax (856) 232-1601
dparenti@lauletta.com
mdellinger@lauletta.com
*Attorneys for Thomas Kasper,*
*Kasper performing Edge and its affiliates*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **THOMAS KASPER; KASPER PERFORMANCE EDGE, INC.; KASPER PERFORMANCE AND AUTOMOTIVE, LLC; and KASPER AUTOMOTIVE AND PERFORMANCE, LLC.;**<br><br>Plaintiff,<br>v.<br><br>**TODD KASPER and KASPER'S CERTIFIED AUTO, LLC, KASPER'S AUTOMOTIVE AND PERFORMANCE, LLC, KAZZ INC, and ABC COMPANY 1-10, fictitious entities**<br><br>Defendant. | Civil Action No.<br><br><br><br><br><br>**VERIFIED COMPLAINT AND JURY DEMAND** |

**Verified Complaint for Trademark Mark Infringement, False Designation of Origin, Unfair Competition, Unfair Competition in Violation of the New Jersey Fair Trade Act**

Plaintiffs Thomas Kasper; Kasper Performance Edge, Inc.; Kasper Performance and Automotive, LLC; and Kasper Automotive and Performance, LLC (collectively, "Plaintiffs"), appearing through their undersigned counsel, complain against Defendants Todd Kasper; Kasper's Certified Auto, LLC; Kasper's Automotive and Performance, LLC; Kazz Inc.; and ABC Company 1–10, fictitious entities (collectively, "Defendants"), and allege as follows:

#456412v1

## I. PARTIES

1. Plaintiff Thomas Kasper ("Plaintiff" or "Kasper") is an individual residing at 633 Tacoma Boulevard, Westville, New Jersey 08093. Plaintiff is the founder and principal of the automotive performance and repair business known as Kasper Performance Edge.

2. Plaintiff Kasper Performance Edge, Inc. ("KPE") is a New Jersey corporation with its principal place of business at 326 Broadway, Westville, New Jersey 08093.

3. Plaintiff Kasper Performance and Automotive, LLC is a New Jersey limited liability company formed to hold and protect name and brand rights associated with Plaintiff's automotive business.

4. Plaintiff Kasper Automotive and Performance, LLC is a New Jersey limited liability company formed for similar purposes, including preservation of Plaintiff's rights in business names, branding, and associated goodwill. Together, Plaintiffs are referred to as "Plaintiffs."

5. Defendant Todd Kasper ("Defendant Todd") is an individual residing at 1555 Hider Lane, Clementon, New Jersey 08021.

6. Defendant Kasper's Certified Auto, LLC is a New Jersey limited liability company with its principal place of business at 50 College Drive, Clementon, New Jersey 08021.

7. Defendant Kasper's Automotive and Performance, LLC is a New Jersey limited liability company with its principal place of business at 50 College Drive, Clementon, New Jersey 08021.

8. Defendant Kazz Inc. is a New Jersey corporation with its principal place of business at 50 College Drive, Clementon, New Jersey 08021.

#456412v1

9. Defendants ABC Company 1–10 are fictitious entities whose true names and corporate forms are presently unknown to Plaintiffs. ABC Company 1–10 are believed to be individuals or entities involved in, or responsible for, the ownership, operation, control, or use of the infringing business names and branding complained of herein.

10. Defendant Todd is the owner, operator, and controlling individual of Defendant entities and is responsible for the selection, adoption, authorization, and continued use of the infringing business names, marks, and branding complained of herein.

11. At all relevant times, Defendants acted individually and in concert with one another, and each Defendant is liable for the acts of the others under principles of agency, control, participation, and inducement.

## II.   JURISDICTION AND VENUE

12. This Court has subject-matter jurisdiction over Plaintiffs' federal trademark and unfair competition claims pursuant to 15 U.S.C. §§ 1114 and 1125, and 28 U.S.C. §§ 1331 and 1338(a), because this action arises under the laws of the United States governing trademarks and unfair competition.

13. This Court has supplemental jurisdiction over Plaintiffs' state-law claims pursuant to 28 U.S.C. § 1367(a), as those claims arise out of the same nucleus of operative facts as Plaintiffs' federal claims and form part of the same case or controversy.

14. This Court has personal jurisdiction over Defendants because Defendants reside in New Jersey, conduct business in New Jersey, have purposefully availed themselves of the privilege of conducting business in New Jersey, and committed the acts complained of herein within this District.

#456412v1

15. Defendants' infringing conduct has been directed at consumers within this District, has caused confusion among customers located within this District, and has caused injury to Plaintiffs within this District.

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants reside in this District and because a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District.

17. Venue is further proper because Defendants' unlawful acts of trademark infringement and unfair competition are ongoing within this District and continue to cause irreparable harm to Plaintiffs here.

### III. FACTUAL BACKGROUND

#### a. Plaintiff's Business, the Mark, and Priority of Use

18. Plaintiff Kasper Performance Edge, Inc. ("KPE") is the owner of the federally registered service mark KASPER PERFORMANCE EDGE (the "Mark"), which is registered on the Principal Register of the United States Patent and Trademark Office in International Class 37 for automotive maintenance and repair services.

19. The Mark is the subject of U.S. Trademark Registration No. 5,570,202, issued on September 25, 2018, following first use in commerce on or about January 1, 2018. See a true and accurate copy of that registration attached hereto as **Exhibit A**.

20. The Mark consists of standard characters and is protected without limitation as to font, style, size, or color.

21. Plaintiff Thomas Kasper is the founder and principal of KPE and has continuously operated the Kasper Performance Edge business under the Mark since at least January 2018.

#456412v1

22. Since that time, Plaintiffs have continuously and exclusively used the Mark in interstate commerce in connection with automotive repair, maintenance, and performance services, including through physical storefront operations, invoices and repair orders, advertising, online listings, and customer communications. See examples from an online search below.

 

23. Plaintiffs' business relies on established trade credit, vendor accounts, and supplier relationships that are tied directly to Plaintiffs' business name, reputation, and creditworthiness.

24. Through Plaintiffs' continuous use, promotion, and delivery of high-quality automotive services, the Mark has acquired substantial goodwill and has come to be recognized by consumers as identifying services originating exclusively with Plaintiffs.

25. Any confusion regarding Plaintiffs' identity, operations, or financial practices threatens Plaintiffs' ability to maintain vendor relationships, obtain credit, and sustain future business growth.

26. Plaintiffs have invested significant time, labor, and financial resources in developing the reputation and goodwill associated with the Mark, including cultivating a loyal customer base and a recognized presence within the relevant automotive services market.

#456412v1

27. Plaintiffs' rights in the Mark are valid, subsisting, and superior to any rights claimed or asserted by Defendants.

### b. Defendants' Knowledge of the Mark and Willful, Malicious Conduct

28. Defendant Todd Kasper has long been aware of Plaintiffs' business, the KASPER PERFORMANCE EDGE Mark, and Plaintiffs' exclusive use of that Mark in connection with automotive repair and performance services.

29. Defendant Todd is Plaintiff Thomas Kasper's brother and, by virtue of that relationship, had direct knowledge of Plaintiffs' business operations, branding, customer base, and reputation in the automotive services market.

30. Prior to Defendants' adoption of the infringing name, Plaintiffs had already established the Mark as a source identifier for automotive services, had developed goodwill associated with the Mark, and had operated continuously under the Mark for several years.

31. Defendants did not independently develop or innocently select the business name "Kasper's Automotive and Performance" or similar variants. Rather, Defendants knowingly adopted a name that is identical or nearly identical to Plaintiffs' registered Mark and Plaintiffs' existing business names.

32. When Defendants were informally asked to stop using the infringing name, Defendants refused and dismissed the concern, stating that the issue was "none of [their] business," thereby confirming Defendants' awareness of the problem and deliberate decision to continue.

33. Defendants have been touting themselves as "The Original" Kaspers Performance on social media. See, also, the images above.

#456412v1

34. Defendants' adoption of the infringing name occurred with full knowledge of Plaintiffs' prior rights and was undertaken for the purpose of trading on Plaintiffs' established goodwill, causing confusion among consumers, and diverting business away from Plaintiffs.

35. Defendants operate in the same line of business as Plaintiffs—automotive maintenance, repair, and performance services—and target the same class of consumers within overlapping geographic markets.

36. Defendants' use of the infringing name in connection with identical services was calculated to create the false impression that Defendants' business is affiliated with, sponsored by, or otherwise connected to Plaintiffs.

37. Defendants' conduct was willful, deliberate, and malicious, and reflects a conscious disregard for Plaintiffs' trademark rights and the likelihood of consumer confusion.

38. Despite Defendants' knowledge of Plaintiffs' rights and the ongoing confusion caused by Defendants' conduct, Defendants have continued to use the infringing name and branding in commerce.

39. On January 22, 2026, mere days after receiving a cease and desist for the above referenced conduct Defendant attempted to change the NJ entity Identification Name from the previous "Kazz Inc." entity to "KASPER'S AUTOMOTIVE & PERFORMANCE CORPORATION."

40. Absent immediate injunctive relief, Defendants will continue their unlawful conduct, further eroding Plaintiffs' goodwill, confusing consumers, and causing irreparable harm for which there is no adequate remedy at law.

#456412v1

### c.     **Defendants' Infringing Use and Resulting Consumer Confusion**

41.     Defendants have used, and continue to use, the infringing business name "Kasper's Automotive and Performance", and confusingly similar variants thereof, in commerce in connection with automotive maintenance, repair, and performance services.

42.     Defendants' infringing use includes, without limitation, use of the infringing name on storefront signage, repair orders and invoices, business records, online business listings, advertising, and customer communications. See examples of Such attached hereto as **Exhibits B-E**.

43.     Defendants' use of the infringing name is visually, phonetically, and conceptually indistinguishable from Plaintiffs' registered KASPER PERFORMANCE EDGE Mark and Plaintiffs' existing business names, particularly when used in connection with identical services.

44.     Defendant's infringement extends to the use of logos and marks in commerce.

45.     Defendants' infringing conduct occurs in the same channels of trade as Plaintiffs' services and targets the same class of consumers seeking automotive repair and performance services.

46.     As a direct and proximate result of Defendants' conduct, consumers have been, and continue to be, confused as to the source, affiliation, sponsorship, or approval of Defendants' services.

47.     Plaintiffs have received customer inquiries, communications, and other indications reflecting confusion between Plaintiffs' business and Defendants' business, including mistaken assumptions that the two businesses are affiliated or operated by the same entity.

48.     Plaintiffs learned that Defendants altered account information, addresses, and contact details associated with Plaintiffs' vendor relationships without authorization

49. Plaintiffs have received phone calls from individuals asking why their vehicles had not been completed or where their vehicles were located, despite Plaintiffs not being involved with those vehicles or transactions.

50. Plaintiffs have received inquiries from customers questioning pricing discrepancies between supposed "locations," based on the false belief that Plaintiffs operate multiple shops.

51. Creditors and vendors have contacted Plaintiffs seeking payment for obligations incurred by Defendants under the infringing business name, despite Plaintiffs having no responsibility for those accounts.

52. Plaintiffs were repeatedly forced to explain that they had no affiliation with Defendants' business, only to be met with disbelief due to Defendants' use of Plaintiffs' name.

53. Plaintiffs' phone number alone ceased to identify Plaintiffs' business to certain suppliers, requiring Plaintiffs to re-establish accounts and credentials.

54. Parts ordered by Plaintiffs were delivered to Defendants' location and withheld, with Defendants falsely claiming the shipments were never received. As a result, delivery drivers were blamed and, in some cases, forced to personally cover the cost of missing parts.

55. In one instance, time-sensitive parts were improperly redirected and shipped back to the manufacturer, forcing Plaintiffs to fly to Florida to retrieve the parts and avoid further business disruption.

56. This confusion is not hypothetical. It is occurring in real time and has resulted in misdirected customer contacts, damage to Plaintiffs' reputation, and loss of control over the goodwill associated with the Mark.

#456412v1

57. Defendants' ongoing use of the infringing name deprives Plaintiffs of the ability to control the nature and quality of services associated with the Mark and exposes Plaintiffs to reputational harm caused by Defendants' conduct.

58. Plaintiffs have incurred substantial out-of-pocket expenses, lost time, and operational disruption as a direct result of Defendants' conduct.

60. The injury to Plaintiffs' goodwill, brand identity, and customer relationships cannot be fully compensated by monetary damages alone and constitutes irreparable harm.

61. Unless Defendants are immediately restrained by this Court, Defendants will continue to cause consumer confusion, dilute the distinctiveness of Plaintiffs' Mark, and inflict continuing irreparable harm upon Plaintiffs.

   d. **Prior Business Separation, Allocation of Names and Business Activities, and Defendants' Knowing Breach of Settlement Agreements**

62. Plaintiffs Thomas Kasper and Defendant Todd Kasper were formerly in business together in multiple automotive-related entities, including Kazz, Inc., an automobile repair business, and Teek, LLC, an entity that owned the real property from which the automotive business operated.

63. In or about September 2017, disputes arose between the brothers concerning the operation and ownership of those businesses, resulting in litigation commenced by Thomas Kasper in the Superior Court of New Jersey, Gloucester County, Chancery Division, under Docket No. C-63-17.

64. That litigation was resolved through a series of negotiated Member Withdrawal, Release, and Mutual Settlement Agreements, including agreements governing Kazz, Inc. and Teek, LLC, each entered into knowingly, voluntarily, and with the assistance of counsel. See a true and accurate copy of that agreement attached hereto as **Exhibit F**.

#456412v1

65. As part of those settlements, the parties expressly separated their business interests, business names, goodwill, and future activities, with Defendant Todd Kasper retaining ownership of the legacy Kazz-related businesses and premises, and Thomas Kasper relinquishing any interest in those entities in exchange for substantial consideration.

66. Plaintiffs transferred only the specific name rights expressly identified in the settlement agreements—namely, signage physically posted on the building and exterior street sign at the former location—and retained all other name and branding rights.

67. Critically, the settlements were intended to effectuate a clean and permanent division of business identities, allowing each party to move forward independently without overlap, confusion, or interference, and to prevent precisely the type of conflict and consumer confusion now at issue.

68. Following the settlements, Thomas Kasper complied with the agreements, exited the shared business operations, and thereafter established his own independent automotive business under the KASPER PERFORMANCE EDGE name and related entities, investing significant time and resources to build a distinct brand, customer base, and reputation.

69. Plaintiffs relocated to a different county and changed their business focus specifically to avoid marketplace confusion, further demonstrating Plaintiffs' good-faith compliance with the settlement agreements.

70. Defendant Todd Kasper was fully aware of the terms and purpose of the settlement agreements, including the allocation of business interests and the importance of maintaining distinct business identities, having personally negotiated and executed those agreements.

71. Notwithstanding that knowledge, Defendants later adopted and began using the business name "Kasper's Automotive and Performance", a name that directly overlaps with and appropriates the structure, wording, and commercial impression of Plaintiffs' established business names and federally registered mark.

72. Defendants later installed a large four-foot by eight-foot sign bearing Plaintiffs' business name at the former location.

73. Customers seeking Plaintiffs personally were falsely told that Plaintiffs were in drug rehabilitation, away racing, or no longer interested in the business. These false statements were made deliberately, outside Plaintiffs' presence, and without any ability for Plaintiffs to correct them.

74. Defendants' adoption of this name was not inadvertent and did not arise in a vacuum. It occurred years after the negotiated separation of the brothers' business interests, with full knowledge that the name would create confusion and undermine the very division the settlement agreements were designed to achieve.

75. Defendants aggressively promoted the infringing name across social media platforms, including YouTube, Facebook, Instagram, TikTok, and Twitter, using Plaintiffs' name on videos, posts, and branded apparel.

76. Defendants' conduct thus represents not only trademark infringement and unfair competition, but a knowing and bad-faith effort to circumvent the agreed-upon separation of business identities, re-insert themselves into Plaintiffs' commercial lane, and capitalize on the goodwill Plaintiffs developed independently and at their own expense.

77. Defendants' conduct has escalated over time and continues unabated, despite Plaintiffs' efforts to mitigate harm and distinguish their business.

#456412v1

78. This history eliminates any plausible claim that Defendants' conduct is coincidental, innocent, or the product of shared family nomenclature, and instead demonstrates willful and malicious intent to confuse consumers and interfere with Plaintiffs' business.

### **COUNT I: Unfair Competition under the Lanham Act, 15 U.S.C. §1125**
(*Against All Defendants*)

79. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

80. Plaintiffs are the owners of the valid, subsisting, and federally registered service mark KASPER PERFORMANCE EDGE, which is registered on the Principal Register of the United States Patent and Trademark Office.

81. Plaintiffs have used the Mark continuously and exclusively in interstate commerce in connection with automotive maintenance, repair, and performance services since at least January 2018, and the Mark has acquired substantial goodwill and distinctiveness.

82. Defendants, without Plaintiffs' authorization, have used and continue to use in commerce a reproduction, counterfeit, copy, or colorable imitation of the Mark in connection with the sale, offering for sale, distribution, and advertising of services that are identical to or directly competitive with Plaintiffs' services.

83. Defendants' use of the infringing name "Kasper's Automotive and Performance" and confusingly similar variants is likely to cause confusion, mistake, or deception among consumers as to the source, affiliation, sponsorship, or approval of Defendants' services.

84. Defendants adopted and used the infringing name with full knowledge of Plaintiffs' prior rights in the Mark and with the intent to trade on Plaintiffs' goodwill and reputation.

85. Defendants' conduct constitutes trademark infringement in violation of 15 U.S.C. § 1125.

86. As a direct and proximate result of Defendants' infringing conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of control over their brand, damage to goodwill and reputation, and diversion of customers.

87. Defendants' infringement has been willful, deliberate, and malicious, rendering this an exceptional case within the meaning of 15 U.S.C. § 1117.

**COUNT II: False Designation of Origin and Unfair Competition *(15 U.S.C. § 1125(a))***

88. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

89. Plaintiffs own protectable trademark and trade name rights in the KASPER PERFORMANCE EDGE Mark and associated business names, which identify and distinguish Plaintiffs' automotive services and signify a single source of origin.

90. Defendants, in connection with the advertising, promotion, offering for sale, and rendering of automotive repair and performance services, have used and continue to use words, names, and designations that are confusingly similar to Plaintiffs' Mark and business names.

91. Defendants' use of the infringing name "Kasper's Automotive and Performance" and similar variants falsely designates the origin of Defendants' services and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants with Plaintiffs, or as to the sponsorship or approval of Defendants' services by Plaintiffs.

92. Defendants' conduct is likely to mislead consumers into believing that Defendants' business is affiliated with, authorized by, or otherwise connected to Plaintiffs, when it is not.

93. Defendants adopted and used the infringing name with knowledge of Plaintiffs' prior rights and with the intent to capitalize on Plaintiffs' goodwill and reputation.

94. Defendants' actions constitute false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a).

95. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of goodwill, loss of control over their reputation, consumer confusion, and diversion of business.

96. Defendants' conduct has been willful and malicious, entitling Plaintiffs to injunctive relief, monetary damages, and all other relief available under 15 U.S.C. § 1117.

### COUNT III: Unfair Competition in Violation of the New Jersey Fair Trade Act *(N.J.S.A. § 56:4-1 et seq.)*

97. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

98. The New Jersey Fair Trade Act prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce within the State of New Jersey.

99. Plaintiffs possess valid and protectable trademark and trade name rights in the **KASPER PERFORMANCE EDGE** Mark and related business names, which have acquired goodwill and distinctiveness through Plaintiffs' continuous use in commerce.

100. Defendants have engaged in unfair methods of competition by adopting and using the infringing business name **"Kasper's Automotive and Performance"** and confusingly similar variants in connection with automotive repair and performance services.

101. Defendants' conduct is likely to deceive, confuse, or mislead consumers as to the source, sponsorship, affiliation, or approval of Defendants' services, in violation of N.J.S.A. § 56:4-1.

102. Defendants' acts were willful, knowing, and undertaken in bad faith with the intent to misappropriate Plaintiffs' goodwill and trade upon Plaintiffs' established reputation.

103. As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered and will continue to suffer irreparable harm, including loss of goodwill, damage to reputation, and diversion of customers.

104. Plaintiffs have no adequate remedy at law and are entitled to injunctive and equitable relief to prevent Defendants' continued violations of the New Jersey Fair Trade Act.

### COUNT IV: New Jersey Common Law Unfair Competition

105. Plaintiffs repeat and reallege each of the foregoing paragraphs as if fully set forth herein.

106. Under New Jersey common law, trademark infringement and unfair competition occur when a party adopts and uses a name or mark that is likely to cause confusion with the name or mark of another who has established prior rights.

107. Plaintiffs possess valid and protectable common law rights in the KASPER PERFORMANCE EDGE Mark and related business names arising from their continuous and exclusive use of those names in commerce. See attached a true and accurate coipy of the NJ Registration attached hereto as **Exhibit G**.

108. Defendants have adopted and used the infringing business name "Kasper's Automotive and Performance" and confusingly similar variants in a manner likely to deceive the public and cause confusion as to the source, sponsorship, affiliation, or approval of Defendants' services.

109. Defendants' conduct constitutes unfair competition under New Jersey common law because it misappropriates Plaintiffs' goodwill, diverts customers, and creates a likelihood of consumer confusion.

#456412v1

110. Defendants' actions were undertaken willfully, knowingly, and in bad faith, with the intent to trade upon Plaintiffs' established reputation and goodwill.

111. As a direct and proximate result of Defendants' unfair competition, Plaintiffs have suffered and will continue to suffer irreparable harm, including damage to their goodwill and reputation, loss of customers, and loss of control over their business identity.

112. Plaintiffs have no adequate remedy at law for Defendants' ongoing misconduct and are entitled to injunctive and equitable relief to prevent further unfair competition.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in their favor and against Defendants and grant the following relief:

A. Temporary, Preliminary, and Permanent Injunctive Relief enjoining Defendants, and all persons acting in concert with them, from directly or indirectly using the name "Kasper's Automotive and Performance", or any other name, mark, or designation that is confusingly similar to Plaintiffs' KASPER PERFORMANCE EDGE Mark or Plaintiffs' business names, in connection with the advertising, promotion, offering, or rendering of automotive repair, maintenance, or performance services;

B. An order requiring Defendants to immediately cease and desist from using any infringing name or designation on storefront signage, invoices, repair orders, business records, advertisements, websites, social media platforms, online business listings, domain names, email addresses, and any other medium of commercial communication;

#456412v1

C. An order directing Defendants to remove, delete, or destroy all signage, advertising materials, promotional content, documents, and other items bearing the infringing name or any confusingly similar designation;

D. An order prohibiting Defendants from representing, expressly or implicitly, that their business is affiliated with, sponsored by, endorsed by, or otherwise connected to Plaintiffs;

E. An award of Defendants' profits, Plaintiffs' actual damages, and any other monetary relief available under 15 U.S.C. § 1117, in an amount to be determined at trial;

F. A finding that Defendants' conduct was willful, deliberate, and malicious, rendering this an exceptional case and entitling Plaintiffs to an award of reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1117(a);

G. An award of Plaintiffs' costs of suit and such other further relief as the Court deems just and equitable; and

H. Such other and further relief as the Court deems appropriate to prevent further infringement, unfair competition, and irreparable harm to Plaintiffs.

**LAULETTA BIRNBAUM, LLC**

_____
**MATTHEW R. DELLINGER, ESQUIRE**

Dated: February 16, 2026

#456412v1

**<u>VERIFICATION</u>**

      I, Thomas Kasper, am the owner and authorized representative of Kasper Performance and Auto and am also named individually as a plaintiff in this action. I have read the foregoing Verified Complaint and know the contents thereof, and I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the factual allegations contained therein are true and correct to the best of my personal knowledge, information, and belief, and that I am authorized to make this verification on behalf of Kasper Performance and Auto.

Signed: *Thomas Kasper*         Date: 01 / 30 / 2026